FISHER *v*. THE RICE GROWERS BANK.

Opinion delivered March 13, 1916.

1. BILLS AND NOTES—ACCOMMODATION—BURDEN OF PROOF.—As between the original parties to a note, the maker may set up as a defense that he signed the note for accommodation merely, and the burden of proving such defense rests upon him.

2. APPEAL AND ERROR—FINDING OF CHANCELLOR.—The findings of fact made by a chancellor, will not be disturbed on appeal, unless they are against the preponderance of the evidence.

3. BILLS AND NOTES—ACCOMMODATION.—The cashier of a bank had permitted overdrafts in favor of himself and certain others, and plaintiffs executed notes which were used in taking care of the overdrafts. *Held*, under the evidence that plaintiffs would be treated as having executed the notes to help their friend, the cashier, out of a difficulty, and not merely for accommodation.

Appeal from St. Francis Chancery Court; *Edward D. Robertson*, Chancellor; affirmed.

*Blackwood & Newman,* for appellants.

1. There was no consideration for the notes; they were given as accommodation paper at the request of the president of the bank to cover certain overdrafts permitted by the cashier of the bank. These overdrafts when paid or secured were to be credited on the notes as paid. The evidence shows that the notes have been paid and should be cancelled. Smith's testimony can not be reconciled with the undisputed facts, and the promises of Smith, on behalf the bank, constituted the only consideration. The failure of the president to fulfill these promises can be pleaded against the bank. 177 S. W. 14. Or, upon proof that his fulfilling them would cause the liability to be terminated, equity will cancel the notes.

2. The evidence shows that all overdrafts which the notes secured have been paid. The facts corroborate the testimony of both the appellants and makes the finding of the chancellor clearly against the preponderance of the evidence. 120 Ark. 313.

*Mann, Bussey & Mann,* for appellee.

1. This being a suit to cancel written instruments the testimony must be clear, unequivocal and conclusive. 93 Ark. 295. However, the weight of the testimony is clearly in favor of the appellee and this court will not disturb the findings of the chancellor on matters of fact, All the evidence points to the fact that appellants signed to help their friend Bratcher out of trouble—to cover the overdrafts permitted by him as cashier against orders.

HART, J. William Fisher and E. N. Harrod filed separate suits in the chancery court against the Rice Growers Bank to cancel a note and mortgage. Each plaintiff alleged that he signed a note payable to the Rice Growers Bank in the sum of $2,500; that the note was delivered to the bank to be used by it as collateral security for the purpose of securing money to meet certain overdrafts; that the note was executed at the solicitation of the president of the bank and solely for the accommodation of the bank; that there was no consideration whatever for the execution of the note.

The bank filed an answer in each case in which it denied that the notes had been executed for accomodation merely but stated the facts to be, that its cashier had an overdraft under his own name and had permitted customers of the bank to have overdrafts, against the rules of the bank; that plaintiffs signed these notes as friends of the cashier to cover these overdrafts.

Judgment was asked in each case for the amount of the note sued on, and for foreclosure of the mortgage given to secure it. The same testimony was used in each case and the cases are consolidated here for the purpose of trial.

The chancellor found the issues for the bank and judgment was rendered against each plaintiff for the amount of the note and the foreclosure of the mortgage ordered in each case. The cases are here on appeal.

(1) In the case of *Boqua* v. *Brady,* 90 Ark. 512, the court held that as between the original parties to a note, the maker may set up as a defense that he signed the note for accommodation merely. So it devolved upon the plaintiffs to show by preponderance of the evidence that they signed the notes for the purpose of accommodating the bank, and that there was no consideration for their execution.

E. N. Harrod testified substantially as follows:

I signed the note in question, in August, 1913, at Wheatley, Arkansas. I had been engaged in the mercantile business there for several years and the Rice Growers Bank was also in business there. H. K. Smith was president and A. C. Bratcher the cashier of the bank. One morning Smith called me in the office of the bank and told me that Bratcher was in bad; that Bratcher had an overdraft of $3,300 and had permitted Charles Flemming a customer of the bank to overdraw his account to the sum of about $4,700, C. S. Hemenway & Sons to overdraw in the sum of $470.26. Smith stated the bank might have to close its doors if something was not done and I agreed to sign a note of $2,500 to enable the bank to procure money to meet the overdrafts. William Fisher

was at that time in Missouri, but he was called back and it was finally agreed that Fisher and I should each make a note to the bank for $2,500 to be used in paying the overdrafts of Fleming and Hemenway. Smith said that he himself would take care of the overdrafts of Bratcher. The notes were signed as accommodation merely to the bank and Smith agreed that we should never have to pay anything on them; that as soon as the overdrafts were taken care of by the parties, our notes would be returned to us.

William Fisher was in Missouri at the time the president first discovered the amount of the overdrafts and came to Wheatley at the request of Bratcher. He corroborated Harrod as to what occurred after he returned and states that the notes were executed at the request of Smith as accommodation to the bank. Bratcher also testified that the notes were signed by the plaintiffs to cover the Fleming and Hemenway overdrafts which amounted to about $5,000 and stated that these overdrafts had since been paid. He said there was nothing said about the plaintiffs taking care of his overdrafts and said that Smith agreed to take care of it.

On behalf of the bank Smith testified that the plaintiffs were friends of Bratcher and had executed the notes solely for his accommodation. He denied in positive terms that he asked the plaintiff to sign the notes as accommodation to the bank but stated that the overdrafts were wholly caused by the action of Bratcher and that he did not know anything about them and that it was against the rules of the bank for Bratcher to suffer customers to overdraw to that extent without consulting the directors and that he had no right to overdraw himself; that the Bank of Forrest City was placed in the hands of a receiver; that it had a large block of stock in the defendant bank; that he told Bratcher that an auditor would doubtless be sent to go over the affairs of the bank; that he asked for a statement from Bratcher; that Bratcher gave him a statement purporting to show all overdrafts; that none of the overdrafts mentioned

above were contained in the statement; that Bratcher upon being pressed admitted that he had done wrong and then acknowledged to his own overdraft, and then to those of Hemenway and Fleming; that Bratcher procured plaintiffs to sign the notes because they were his friends.

Russell Johnson, the bookkeeper of the bank, testified that he was a nephew of the president of the bank; that when his uncle asked Bratcher about the overdrafts that Bratcher first stated that the list was correct and then admitted that it was not. He then told of his own overdraft and of the Hemenway and Fleming overdrafts, He stated that he knew he had ruined the bank and asked that he be given time to get some one to help him.

In other respects the witness corroborated the testimony of the president of the bank to the effect that the notes were signed by the plaintiffs as accommodation to Bratcher.

When the notes were executed and money was procured by using them as collateral, the overdraft of Bratcher was first paid off with the proceeds and then the overdraft of Hemenway was taken up and the balance credited on the overdraft of Fleming. Bratcher knew that this was done and made no objection thereto.

There was a meeting of the directors to discuss the matter of the shortage of the cashier and of the overdrafts permitted by him. Two of the directors resided at Marianna and came to Wheatley to attend the meeting. They testified that they knew nothing about the overdrafts until that time and had not authorized them; that Bratcher had no authority to permit overdrafts to that amount without the direction of the board of directors; that they understood that Bratcher's overdraft was to be taken care of by the plaintiffs; that Bratcher was present and seemed to understand it that way.

(2) We have only attempted to set out the substance of the testimony. The witnesses were examined and cross-examined at great length. It is the settled rule in this State that the findings of fact made by a chancellor

will not be disturbed on appeal unless they are against the preponderance of the evidence. Tested by this well known rule, we think the decree should be affirmed.

(3) It is true that both the plaintiffs and Bratcher testified that the notes were signed to accommodate the bank merely, but their testimony is not only contradicted by the president of the bank and its bookkeeper, but also by the attendant circumstances. The bank records show that the notes executed were issued as collateral to borrow money and that the proceeds were first applied to the overdraft of Bratcher and the remainder to the overdrafts of Fleming and Hemenway. Bratcher knew this record was being made and this record was inconsistent with the testimony to the effect that Smith was to take care of Bratcher's overdraft. It was Bratcher who telegraphed Fisher to return and solicited him to sign the note.

The absent directors testified that they understood that the plaintiffs had signed the overdrafts to help Bratcher and not as accommodation for the bank; that Bratcher was present and seemed to so understand it; that he seemed well pleased that he had gotten out of his trouble.

As all of the evidence shows that Bratcher was wholly without authority to make an overdraft himself or to allow customers to do so in the amounts allowed to Hemenway and Fleming. The evidence shows that plaintiffs renewed their notes to the bank after Fleming and Hemenway had paid their overdrafts to the bank, and this fact, we consider a strong circumstance against the contention of the plaintiffs. In short, we think all the circumstances point to the fact that plaintiffs signed the notes in order to help their friend out of a difficulty and not as accommodation merely to the bank.

The decree will therefore be affirmed.